**EVERVIEW LTD.**
Bradley B. Johnson (SBN 257220)
James I. Anderson (SBN 316729)
9655 Granite Ridge Drive, Suite 200
San Diego, CA 92123
Tel: (916) 704-6393
Fax: (916) 250-0103
bjohnson@everviewlaw.com
janderson@everviewlaw.com

*Attorneys for Plaintiffs*
RENEWABLE AMERICA LLC and RNA SERVICES LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEWABLE AMERICA LLC, a California limited liability company, and RNA SERVICES LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> RADIAL POWER L.L.C, a Delaware limited liability company; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: <br><br> **VERIFIED COMPLAINT FOR DAMAGES** |

COMPLAINT

Plaintiffs Renewable America LLC ("RNA") and RNA Services LLC ("RNA Services") (collectively "Plaintiffs") hereby allege as follows. All exhibits attached hereto are incorporated into and made a part of this Complaint by reference.

### PARTIES

1.     Plaintiff RNA is, and at all times relevant hereto was, a California limited liability company in good standing and qualified to do business in the State of California. RNA designs and develops grid-connected community-scale commercial solar photovoltaic energy generation and battery storage facilities. In some cases, RNA retains ownership of and operates completed facilities. In other cases, as is true for this action, RNA sells facilities to third parties to own and operate following construction and connection to the commercial electricity grid.

2.     Plaintiff RNA Services is, and at all times relevant hereto was, a California limited liability company in good standing and qualified to do business in the State of California. RNA Services is a wholly owned subsidiary of RNA. RNA Services constructs, services, and operates the grid-connected community-scale commercial solar photovoltaic and battery storage facilities designed and developed by RNA.

3.     Plaintiffs are informed and believe that Defendant Radial Power L.L.C. ("Radial" or "Defendant") is, and all times relevant hereto was, a Delaware limited liability company, with its principal places of business in New York, New York and Houston, Texas. Radial is in the business of financing, purchasing, and operating commercial solar energy generation and battery storage facilities, among other things.

4.     Plaintiff is ignorant of and cannot presently ascertain the true identities of the defendants named herein as Does 1 through 50, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this pleading to add the true names and capacities of said Doe defendants once they become known or the facts giving rise to their liability are ascertained. Any reference to "defendant" or any known defendant expressly named herein shall be deemed to include each and every defendant named as a Doe. On information and belief, Plaintiff alleges that each Doe defendant has or claims some interest in all or some portion of the

real property facilities, or projects described herein (whether adverse to Plaintiffs or otherwise), has perpetrated the acts complained of herein, is an agent, partner, co-adventurer, or co-conspirator of any expressly named defendant, or is otherwise a necessary or proper party to this action.

<u>**JURISDICTION AND VENUE; JURY TRIAL WAIVER**</u>

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction. Plaintiffs RNA and RNA Services are both limited liability companies organized under the laws of California, and each of their respective members are citizens of the State of California. Defendant Radial is a limited liability company organized under the laws of Delaware. On information and belief, Defendant Radial's members are citizens of Texas and New York and none are citizens of California. Complete diversity exists and the amount in controversy exceeds $75,000 as follows: First Cause of Action: $514,999.00; Second Cause of Action: $487,625.00; Third Cause of Action: $615,431.87; Fourth Cause of Action: $161,672.25; Fifth Cause of Action: $269,994.16; Sixth Cause of Action: $431,666.41; Seventh Cause of Action: $571,351.91; Eight Cause of Action: $544,551.29; Ninth Cause of Action: $269,994.16; Tenth Cause of Action: $161,672.25; Eleventh Cause of Action: $615,431.87; Twelfth Cause of Action: $1,002,624.

6.      This Court has personal jurisdiction over the parties to this action pursuant to valid contractual agreements between the parties, by and through which the parties consented to the personal jurisdiction of this Court. (See e.g. Ex 3. FOST-A MIPA § 10.10; Ex. 12. FOST-B MIPA § 10.10; Ex. 17. RASE MIPA § 10.10.). Alternatively, Defendant has sufficient minimum contacts with California because it purchased and operates solar electricity generating facilities and battery storage facilities in California.

7.      Venue in the Northern District of California is proper pursuant to valid contractual agreements between the parties, by and through which the parties consented to the laying of venue in this Court. (See e.g. Ex 3. FOST-A MIPA § 10.10; Ex. 12. FOST-B MIPA § 10.10; Ex. 17. RASE MIPA § 10.10.). Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including negotiation,

execution, administration of payments, and performance of certain of the contracts at issue in this action.

8. The parties each knowingly and voluntarily waived their right to a jury trial pursuant to valid contractual agreements between the parties relating to any dispute arising out of or related to those agreements. (See e.g. Ex 3. FOST-A MIPA § 10.11; Ex. 12. FOST-B MIPA § 10.11; Ex. 17. RASE MIPA § 10.11.).

## DIVISIONAL ASSIGNMENT

8. The contractual agreements between the parties to this action do not identify an assigned Division, and as such the proper Division for this action is in the San Jose Division as many of the events that give rise to claims occurred in Santa Clara County, the Plaintiffs' offices and principal place of business, including its contracting and administrative functions, are located in Santa Clara County, and the San Jose Division best serves the convenience of the parties and witnesses to this action.

## STATEMENT OF FACTS

**Relationship of the Parties**

9. RNA designs and develops grid-connected community-scale commercial solar photovoltaic energy generation and battery storage facilities (hereafter, "power facilities" or "power facility") across California. RNA Services constructs and services these power facilities. Once constructed, RNA typically sells the completed power facilities to third parties to own and operate.

10. RNA creates wholly owned single-purpose legal entities for each power facility. Through these single-purpose entities, RNA secures land rights, enters into required agreements with utilities for the provision and sale of renewable energy, and applies for and obtains required permits and approvals to construct and operate the power facility. This legal entity (each, a "project entity") also enters into a contract with RNA Services to construct and install the power facility. Upon permitting and installation, RNA typically sells its interest in the project entity to a purchaser/operator, who then assumes all of the project entity's rights and obligations.

11. Once the purchaser/operator assumes the interest in the project entity, it also assumes the obligations of the project entity, including conditions from local jurisdictions, power purchase agreements with utilities, and any other applicable agreement entered into by the project entity.

12. The legal relationship between Plaintiffs and the purchaser/operator is based on two primary contracts. The first of these is a Membership Interest Purchase Agreement ("MIPA") between RNA and a purchasing party, through which RNA conveys ownership interest in a project entity to the purchasing party. The second primary agreement is a Master Installer Agreement ("MIA") between RNA Services and the project entity for the construction and installation of the power facility. By purchasing RNA's ownership interest in the project entity, a purchasing party because party to the MIA agreement.

13. In or around 2023, Plaintiff RNA and Defendant Radial began discussions regarding Radial's intent to purchase certain of RNA's power facilities in California. Ultimately, RNA and Radial entered into agreements for Radial to purchase five power facilities: Foster Clean Power A ("FOST-A") and Foster Clean Power B ("FOST-B"), both located in Humboldt County, California; Ranch Sereno Clean Power ("RASE"), located in Contra Costa County; and Dos Palos Clean Power ("DOSP") and West Tambo Clean Power II ("WEST II"), both located in Merced County.

14. This action relates to Radial's failure to pay to RNA and RNA Services moneys owed to the Plaintiffs, respectively, under the various MIPAs and MIAs associated with the FOST-A, FOST-B, RASE, DOSP, and WEST II projects.

**The Agreements Between the Parties**

**Foster Clean Power A**

15. On January 10, 2022, RNA formed Foster Clean Power A LLC, a Delaware limited liability company. RNA formed Foster Clean Power A LLC as the project entity for the FOST-A project. The FOST-A project consists of a 4.46-megawatt solar generation facility and a five megawatt-hour battery storage facility.

16. On January 18, 2022, Foster Clean Power A LLC entered into a land lease agreement with Arcata Land Company LLC for property located in Humboldt County on which to construct the FOST-A project.

17. On or about October 7, 2022, Foster Clean Power A LLC entered into a Power Purchase Agreement ("PPA") with Redwood Coast Energy Authority ("RCEA") (the "FOST-A PPA"). The FOST-A PPA is attached to this Complaint as **Exhibit 1**. The PPA describes the terms under which RCEA would purchase electricity generated by the FOST-A project from Foster Clean Power A LLC.

18. On or about May 20, 2024 RNA Services and Defendant Radial entered into an MIA for FOST-A ("FOST-A MIA"). The FOST-A MIA is attached to this Complaint as **Exhibit 2**.

19. On or about May 20, 2024 RNA Services entered into an "Interconnection Agreement" with Foster Clean Power A LLC.

20. On or about May 22, 2024, RNA and Defendant Radial entered into a MIPA for Foster Clean Power A LLC ("FOST-A MIPA"). The FOST-A MIPA is attached to this Complaint as **Exhibit 3**.

21. RNA and Defendant Radial amended the FOST-A MIPA three times. The first of these was executed on June 27, 2024, and is attached to this Complaint as **Exhibit 4**. The Second Amendment to the FOST-A MIPA was executed on May 6, 2025, and is attached to this Complaint as **Exhibit 5**. The Third Amendment was executed on August 26, 2025, and is attached to this Complaint as **Exhibit 6**.

22. The FOST-A MIPA obligates Radial to pay RNA a total of $1,559,817 as consideration for transfer of RNA's ownership of FOST-A Clean Power LLC to Radial. (See Ex. 3, FOST-A MIPA, § 2.2.) This payment consists of three parts: (1) a "signing payment" of $200,000 upon execution of the FOST-A MIPA (*Id*. § 2.2.1); (2) a "closing payment" of $250,000 due on closing (as defined in the FOST-A MIPA) (note that the First Amendment modified the closing payment from $250,000 to $600,000) (Ex. 4, First Amended FOST-A MIPA, § 2.2.3); and

(3) a "COD Payment" due three days after the "Substantial Completion Date" as defined in the FOST-A MIA (*Id*. § 2.2.4; see also Ex. 3, FOST-A MIPA § 5.10).

23.    The Third Amendment to the FOST-A MIPA additionally obligates Defendant Radial to pay RNA a "TPDA Process Payment." (Ex. 6, Third Amended FOST-A MIPA, § 2.2.7.) The TPDA Process Payment is based on requirements in the FOST-A PPA. Under the FOST-A PPA, Defendant Radial was required to apply for "Full Capacity Deliverability Status" ("FCDS") from the California Independent System Operator ("CAISO") prior to March 31, 2026. (*Id*. § 2.2.7(i).) Pursuant to section 2.2.7(ii) of the Third Amendment to the FOST-A MIPA, RNA undertook the responsibility of applying for FCDS Status from CAISO, and as consideration, Defendant agreed to pay RNA a one-time fixed fee of $20,000 and a "success fee" of thirty percent of all additional revenue Defendant actually received from the FOST-A project attributable to achieving FCDS. (*Id*. § 2.2.7(iii).) The success fee is payable by Defendant Radial to RNA monthly, based on the monthly payment Radial receives from RCEA pursuant to the PPA. (*Ibid*.)

24.    On March 31, 2026, Plaintiffs received communication from CAISO that they obtained FCDS for the FOST-A Project. As such, pursuant to the terms of the Third Amended FOST-A MIPA, Defendant Radial is obligated to pay the monthly thirty-percent success fee to RNA. (See *id*. § 2.2.7(iii).)

25.    Plaintiffs reached "Substantial Completion" as defined in the FOST-A MIPA and FOST-A MIA on or about July 27, 2025. (Ex. 3, FOST-A MIPA § 2.2.4; Ex. 3, FOST-A MIA § 5.9.) Defendant Radial was obligated to pay the COD payment to RNA by July 30, 2025. Defendant Radial only paid a portion of the COD payment on July 27, 2025.

26.    To date, Defendant Radial has paid the following amounts to Plaintiff RNA pursuant to the FOST-A MIPA:

A.    On or about May 24, 2024: the signing payment of $200,000. (Ex. 3, FOST-A MIPA § 2.2.1.)

B.    On or about June 28, 2024: the closing payment of $600,000. (*Id*. § 2.2.3.)

C.     On or about July 27, 2025: a portion of the COD payment, consisting of $244,818. (*Id*. § 2.2.4.)

D.     On or about December 22, 2024: the TPDA fee of $20,000. (Ex. 6 Third Amended FOST-A MIPA § 2.2.7(iii).)

27.     Under the terms of the FOST-A MIPA, Defendant Radial still owes to RNA and is still required to pay $514,999 of the COD Payment.

28.     Under the FOST-A MIPA, Defendant Radial is obligated to pay a monthly TPDA Process Payment equal to thirty percent of the additional revenue actually received by Radial under the PPAs attributable to achieving FCDS (Ex. 6, Third Amended FOST-A MIPA § 2.2.7(iii).)

29.     Throughout 2025, Plaintiff RNA and Defendant Radial exchanged correspondence regarding the payment of the remaining COD Payment amount due to Plaintiff RNA.

30.     On or about February 12, 2026, Defendant, in response to correspondence from Plaintiff RNA, sent Plaintiff RNA a letter outlining outstanding amounts due to Plaintiff RNA ("Radial February 12 Letter"). This letter is attached to this Complaint as **Exhibit 7**. In relevant part, Defendant acknowledges in this letter that it still owes Plaintiff RNA a portion of the FOST-A MIPA COD Payment. (Ex. 7, Radial February 12 Letter, p. 2.)

31.     Counsel for Plaintiffs responded to the Radial February 12 Letter on or about March 11, 2026 ("RNA March 11 Letter"). The RNA March Letter is attached to this Complaint as **Exhibit 8**. In relevant part, the RNA March 11 Letter outlines all amounts due to Plaintiffs from Defendant, including under the FOST-A MIPA. In addition to the COD payment balance of $514,999, Radial owes Plaintiffs $5,500.67 for service work performed on the FOST-A project, as well as $51,425.62 in pass-through interest charges incurred by RNA due to Radial's failure to make timely payments under the FOST-A MIPA and MIA.

32.     Plaintiffs have demanded the foregoing payments from Radial, with specific reference to the provisions in the MIPA and MIA that entitle Plaintiffs to those payments, and with invoices and other supporting documentation.

33. On April 8, 2026, Defendant's Chief Legal Officer, Jeff Keeler, emailed counsel for Plaintiffs and confirmed that Defendant does not intend to pay the amounts due under the FOST-A MIPA as outlined in the Radial February 12 Letter and the RNA March 11 Letter. This email is attached to this Complaint as **Exhibit 9**.

**Foster Clean Power B**

34. On January 9, 2023, Plaintiff RNA formed Foster Clean Power B LLC, a Delaware limited liability company. RNA formed Foster Clean Power B LLC as the project entity for the FOST-B project. The FOST-B Project consists of a 4.95-megawatt solar electricity generation facility and a 5.2 megawatt-hour battery storage facility.

35. On February 2, 2023, Foster Clean Power B LLC entered into a land lease agreement with Arcata Land Company LLC for property located in Humboldt County on which to construct the FOST-B project.

36. On or about December 8, 2023 Foster Clean Power B entered into an interconnection agreement with Pacific Gas and Electric ("PG&E").

37. On or about April 24, 2024, Foster Clean Power B LLC entered into PPA with RCEA (the "FOST-B PPA"). The FOST-B PPA is attached to this Complaint as **Exhibit 10**.

38. On or about May 29, 2024 RNA Services and Defendant Radial entered into an MIA for the FOST-B Project ("FOST-B MIA"). The FOST-B MIA is attached to this Complaint as **Exhibit 11**.

39. On or about May 30, 2024, Plaintiff RNA and Defendant entered into a MIPA for Foster Clean Power B LLC ("FOST-B MIPA"). The FOST-B MIPA is attached to this Complaint as **Exhibit 12**.

40. Plaintiff RNA and Defendant Radial amended the FOST-B MIPA two times. The First Amendment was executed on May 6, 2025, and is attached to this Complaint as **Exhibit 13**. The Second Amendment was executed on August 26, 2025, and is attached to this Complaint as **Exhibit 14**.

41.    The FOST-B MIPA obligates Defendant Radial to pay Plaintiff RNA a total of $1,874,348 as consideration for transfer of RNA's ownership of FOST-B Clean Power LLC to Radial. (See Ex. 12, FOST-B MIPA, § 2.2.) The payment consists of three parts: (1) a "signing payment" of $200,000 due upon execution of the FOST-B MIPA (*Id*. § 2.2.1); (2) a "closing payment" of $250,000 due on closing (as defined in the FOST-B MIPA) (*Id*. § 2.2.3); and (3) a "COD Payment" due three days after the "Substantial Completion Date" as defined in the FOST-B MIA (*Id*. § 2.2.4; see also Ex. 11, FOST-B MIA § 5.10).

42.    The Second Amendment to the FOST-B MIPA obligates Defendant Radial to pay Plaintiff RNA a "TPDA Process Payment" based on requirements in the FOST-B PPA. (Ex. 14, Second Amended FOST-B MIPA § 2.2.7.) Pursuant to section 2.2.7(ii) of the Second Amendment to the FOST-B MIPA, Plaintiff RNA undertook the responsibility of applying for FCDS Status from CAISO, and as consideration, Defendant agreed to pay Plaintiff RNA a one-time fixed fee of $20,000 and a "success fee" of thirty percent of all additional revenue Defendant actually received from the FOST-B project attributable to achieving FCDS. (*Id*. § 2.2.7(iii).) The success fee is payable from Defendant Radial to Plaintiff RNA monthly, based on the monthly payment from RCEA to Defendant pursuant to the PPA. (*Ibid*.)

43.    On March 31, 2026, Plaintiffs received communication from CAISO that they obtained FCDS for the FOST-B Project. As such, pursuant to the terms of the Second Amended FOST-B MIPA, Defendant is obligated to pay the monthly success fee to Plaintiffs. (See *id*. § 2.2.7(iii).)

44.    Plaintiffs reached "Substantial Completion" as defined in the FOST-B MIPA and FOST-B MIA on or about July 27, 2025. (Ex. 12, FOST-B MIPA § 2.2.4; Ex. 11, FOST-B MIA § 5.9.) Defendant Radial was obligated to pay the COD payment to RNA by July 30, 2025. Defendant Radial only paid a portion of the COD payment on July 27, 2025.

45.    To date, Defendant Radial has paid the following amounts to Plaintiffs pursuant to the FOST-B MIPA:

A.    On or about May 30, 2024: the $200,000 signing payment. (Ex. 12, FOST-B MIPA § 2.2.1.)

B.    On or about July 25, 2024: the $250,000 closing payment. (*Id*. § 2.2.3.)

C.    On or about July 27, 2025: $936,723, which is a portion of the COD payment. (See *Id*. § 2.2.4.)

D.    On or about December 22, 2024: the TPDA fee of $20,000. (See Ex. 13, Second Amended FOST-B MIPA § 2.2.7(iii).)

46.    Under the terms of the FOST-B MIPA, Defendant Radial Power is still required to pay $487,625 of the COD Payment.

47.    Under the terms of the First Amendment to the FOST-B MIPA, Defendant is obligated to pay a monthly TPDA Process Payment to Plaintiffs.

48.    Throughout 2025, Plaintiff RNA and Defendant Radial exchanged correspondence regarding payment of the remaining COD Payment amount due to Plaintiff pursuant to the FOST-B MIPA.

49.    The Radial February 12 Letter that Radial transmitted to Plaintiffs also discusses amounts due under the FOST-B MIPA, and in relevant part, confirms that Defendant still owes Plaintiff RNA a portion of the FOST-B MIPA COD Payment. (Ex 7, Radial February 12 Letter, p. 2.)

50. Counsel for Plaintiffs responded to the Radial February 12 Letter in the RNA March 11 Letter attached to this Complaint as **Exhibit 8**. In relevant part, the RNA March 11 Letter outlines all amounts due to Plaintiffs from Defendant, including under the FOST-B MIPA. In addition to the COD payment balance of $487,625, Radial owes Plaintiffs $5,500.67 for service work performed on the FOST-B project, as well as $51,425.62 in pass-through interest charges incurred by RNA due to Radial's failure to make timely payments under the FOST-B MIPA and MIA.

51.     Plaintiffs have demanded the foregoing payments from Radial, with specific reference to the provisions in the MIPA and MIA that entitle Plaintiffs to those payments, and with invoices and other supporting documentation.

52.     On April 8, 2026, Defendant's Chief Legal Officer, Jeff Keeler, emailed counsel for Plaintiffs and confirmed that Defendant does not intend to pay the amounts due under the FOST-B MIPA.

**Ranch Sereno Clean Power**

53.     On December 31, 2020, Plaintiff RNA formed Ranch Sereno Clean Power LLC, a California limited liability company. RNA formed Ranch Sereno Clean Power LLC as the project entity for the RASE project. The RASE project consists of a 2.59-megawatt solar electricity generation facility and 4 megawatt-hour battery storage facility located in Contra Costa County.

54.     On or about March 11, 2021 Ranch Sereno Clean Power LLC entered into a "Small Generator Interconnection Agreement" with PG&E ("RASE SGIA"). The RASE SGIA is attached to this Complaint as **Exhibit 15**.

55.     The RASE SGIA requires the posting of an interconnection security in the amount sufficient to cover the costs of constructing, designing, procuring, and installing the interconnection facilities related to the RASE project. (Ex. 15, RASE SGIA, § 6.3.) The RASE SGIA required payment of a security deposit in the amount of $202,500, which Plaintiff RNA paid on behalf of Ranch Sereno Clean Power LLC.

56.     On or about February 23, 2022 Ranch Sereno Clean Power, LLC entered into a FIT Plus Renewable Power Purchase Agreement with Marin Clean Energy ("RASE PPA"). The RASE PPA is attached to this Complaint as **Exhibit 16**.

57.     The RASE PPA required Ranch Sereno Clean Power LLC to post a development security in the amount of $180,000, in addition to a performance security of $180,000. (Ex. 16, RASE PPA, §§ 8.7; 8.8.) These securities are refundable provided that Ranch Sereno Clean Power LLC, through RNA, completes certain obligations. (See *id.*) RNA paid these security amounts on behalf of Ranch Sereno Clean Power LLC.

58.    On January 25, 2024, Ranch Sereno Clean Power LLC entered into a land lease agreement with a Mr. Jeffrey Jay Jess, through which Ranch Sereno Clean Power LLC leased property on which to construct the RASE project.

59.    On or about May 20, 2024, RNA Services and Defendant Radial entered into an MIA for the RASE project ("RASE MIA").

60.    On or about May 22, 2024, Plaintiff RNA and Defendant Radial entered into a MIPA for Ranch Sereno Clean Power, LLC. ("RASE MIPA"). The RASE MIPA is attached to this Complaint as **Exhibit 17**. Plaintiff RNA and Defendant amended the RASE MIPA once, on September 6, 2024. The First Amendment to the RASE MIPA is attached to this Complaint as **Exhibit 18**.

61.    The RASE MIPA obligates Defendant Radial to pay Plaintiff RNA a total of $247,590 as consideration for transfer of RNA's ownership of Ranch Sereno Clean Power LLC to Radial. (Ex. 17, RASE MIPA, § 2.2.) This consists of a signing payment of $100,000 and a COD payment of the remainder. (*Id*. §§ 2.2.1; 2.2.4.)

62.    The First Amendment to the RASE MIPA provides that the signing payment of $100,000 is payable to Plaintiff RNA, but in the event that Plaintiff RNA failed to satisfy "Seller Conditions Precedent" (as defined in the RASE MIPA) within 150 days of September 6, 2024, or if Plaintiff RNA was in default, the $100,000 signing payment would be refundable to Defendant. (Ex. 18, First Amended Rase MIPA, § 2.2.1(a).) The First Amended RASE MIPA further states that if Plaintiff RNA fails to refund the signing payment as required, Defendant may offset "such refundable amounts from any current or future payments obligations to [Plaintiff RNA]...based on the [RASE MIPA] or any other agreements between [Plaintiff RNA] and [Defendant]. (*Ibid*.) Defendant Radial did not issue any notice of breach or of any failure by Plaintiff RNA to fulfill conditions precedent.

63.    The RASE MIPA requires Plaintiff RNA to provide certain closing items to Defendant Radial upon closing (as defined therein) including, but not limited to, agreements with

local jurisdictions, copies of all milestone certificates pursuant to the RASE MIA, environmental reports, and many other items. (See generally Ex. 18, RASE MIPA, § 3.1.3.)

64.     Pursuant to the RASE MIPA, in order for the parties to terminate the contract, one of several events must occur. First, the parties may mutually terminate the RASE MIPA upon written consent of both parties, preceded by a notice of termination. (Ex. 18, RASE MIPA, §§ 9.1.1(a); 9.2.) Second, either party may terminate the MIPA unilaterally due to a breach of any representation, warranty, covenant, or other agreement and the breach is uncurable or remains uncured for 45 days after notice of breach from one party to the other. (*Id*. § 9.1.1(b).) Third, the MIPA may be terminated due to the bankruptcy of either party. (*Id*. subds. 9.1.1(d);(e).) Finally, the parties may terminate the MIPA in response to an order enjoining the RASE project. (*Id*. subd. (c).)

65.     On or about March 11, 2025, John Bates, the founder and former CEO of Defendant Radial, communicated with Mr. Arian (RNA's founder and CEO), stating that Defendant was "passing on [the RASE Project] due to tariff risk and timeline." This communication between Mr. Bates and Mr. Arian is attached to this Complaint as **Exhibit 19**. This decision was not based on any nonperformance of obligations by RNA or RNA Services- the Plaintiffs met their conditions as required under the respective agreements.

66.     Thereafter, on March 31, 2025, Mr. Arian transmitted a signed MIPA termination notice to Mr. Bates requesting a countersignature, as required by RASE MIPA sections 9.1.1(a) and 9.2. However, neither Mr. Bates, nor any other executive or employee of Defendant Radial, signed the termination notice.

67.     Plaintiff RNA, through Mr. Arian and other RNA employees, communicated to Defendant Radial throughout 2025 regarding the need to terminate the RASE PPA through a mutual agreement per the terms of the RASE MIPA, as the conditions for a unilateral termination were not met. Radial did not respond to these communications.

68.     Mr. Arian unilaterally terminated the RASE PPA on or about February 12, 2026. In order to terminate the RASE PPA, Ranch Sereno Clean Power LLC (through Plaintiff RNA)

paid Marin Clean Energy $180,000, which was the amount of the performance security posted. The termination agreement for the RASE Project is attached to this Complaint as **Exhibit 20**.

69.    RNA retained the $100,000 singing payment, and Defendant Radial has tried to offset this from other contracts and other amounts. (See Ex. 7, Radial February 12 Letter.)

70.    Because the parties did not terminate the RASE MIPA, Plaintiff RNA incurred significant expenses maintaining and developing the RASE Project as required by the RASE MIPA. These expenses include rent paid to the landowner, expenses for maintaining permits held by Ranch Sereno Clean Power LLC, interconnection security costs, PPA development security costs, project maintenance costs, and other costs associated with the RASE project. These costs total $615,431.87 as of the date of this Complaint.

71.    Defendant Radial is responsible for these costs, and is obligated to reimburse RNA for these costs. RNA has demanded payment for these costs from Radial, and on April 8, 2026, Defendant's Chief Legal Officer, Jeff Keeler, emailed counsel for Plaintiffs and confirmed that Defendant does not intend to pay these amounts due.

**Dos Palos Clean Power**

72.    On January 27, 2022, Plaintiff RNA formed Dos Palos Clean Power LLC, a Delaware limited liability company. RNA formed Dos Palos Clean Power LLC as the project entity for the DOSP project. The DOSP project consists of a 4.29-megawatt solar electricity generation facility located in Merced County.

73.    On or about January 18, 2022 Dos Palos Clean Power LLC entered into an interconnection agreement with PG&E.

74.    On or about September 2, 2022 Dos Palos Clean Power LLC entered into a PPA with Peninsula Clean Energy Authority.

75.    On or about January 6, 2023 Dos Palos Clean Power LLC entered into a Land Use Agreement with the Robert E. Millbourn 2019 Trust, a Revocable Living Trust, for the purpose of leasing property on which to construct the DOSP project.

76.     On or about February 27, 2024 Plaintiff RNA Services entered into an MIA with Defendant Radial for the DOSP project ("DOSP MIA").

77.     On or about February 27, 2024, Plaintiff RNA  entered into a MIPA with Defendant Radial for Dos Palos Clean Power LLC ("DOSP MIPA").

78.     On or about June 4, 2025 Plaintiffs reached "Final Completion" under the DOSP MIA, meaning that Plaintiffs successfully completed construction of the DOSP project.

79.     The parties closed on the DOSP MIPA on June 4, 2025, per its terms, and Defendant made all required payments under the DOSP MIPA in connection with that closing.

80.     Beginning even before Final Completion and closing, which occurred on or about June 4, 2025, Defendant Radial has requested assistance from Plaintiffs on several aspects of the DOSP project not associated with the MIA or the MIPA, which as extra-contractual in nature. This has primarily consisted of electrical work on components with manufacturing defects (the "extra-contractual work").

81.     The DOSP project extra-contractual work is not associated with a warranty claim, and this work is not otherwise required pursuant to the MIPA or MIA.

82.     Defendant Radial requested Plaintiffs conduct the DOSP extra-contractual work due to Plaintiffs' familiarity with the project.

83.     From December 2024 to November 2025, Plaintiff RNA Services conducted the requested extra-contractual work on the DOSP project for Defendant Radial. This extra-contractual work includes an estimated 39 hours of office and executive time, including emails, meetings, phone calls, and coordinating visits, and 20 days service calls by Plaintiff's electrician employees to the DOSP project to conduct electrical work.

84.     Defendant Radial specifically requested that RNA Services perform this extra-contractual work, and coordinated with RNA Services in performing the work.

85.     To date, the costs this extra-contractual work totals $153,590.25. This total includes hourly electrician rates, parts, communications, and mileage reimbursements.

86.    RNA Services conducted additional extra-contractual work, at the Defendant Radial's request, consisting of the replacement of a trip unit and breaker. The costs associated with this work are $8,082 which include labor, parts and mileage reimbursements.

87.    Plaintiffs demanded payment of these costs from Defendant Radial. (See Ex. 8, RNA March 11 Letter). On April 8, 2026, Defendant's Chief Legal Officer, Jeff Keeler, emailed counsel for Plaintiffs and confirmed that Defendant does not intend to pay these amounts due. (See Ex. 9.)

**West Tambo Clean Power II**

88.    On or about January 27, 2022, Plaintiffs formed West Tambo Clean Power II LLC, a Delaware limited liability company. RNA formed West Tambo Clean Power II LLC as the project entity for the WEST II project. The WEST II Project consists of a 2.93-megawatt solar electricity generation facility located in Merced County.

89.    On or about July 13, 2022 West Tambo Clean Power II LLC entered into an interconnection agreement with PG&E.

90.     On or about May 8, 2022, West Tambo Clean Power II LLC entered into a PPA with the City of San Jose.

91.    On or about September 13, 2022, West Tambo Clean Power II LLC entered into a Land Use Agreement with the Paul A. Farajian Revocable Trust of 2006, U/I/D 3/7/06, for the purpose of leasing property on which to construct the WEST II project.

92.    On or about February 27, 2024, Plaintiff RNA Services entered into an MIA with Defendant Radial relating to the WEST II Project ("WEST II MIA").

93.    On or about February 27, 2024, Plaintiff RNA entered into a MIPA with Defendant Radial for West Tambo Clean Power II LLC ("WEST II MIPA").

94.    On or about June 25, 2025, Plaintiffs reached "Final Completion" under the WEST II MIA, meaning that Plaintiffs successfully completed construction of the WEST II Project.

95.    The parties closed on the WEST II MIPA on June 25, 2025, per its terms, and Defendant made all required payments under the WEST II MIPA at closing.

96. Between August 2024 and February 2026, Defendant Radial has requested extra-contractual work from Plaintiffs on several aspects of the WEST II project, including electrical work. This extra-contractual work has included an estimated approximately 27 hours of office and executive time, including emails, meetings, phone calls, and coordinating visits and 41 site visits by RNA Services electricians to perform electrical work.

97. This extra-contractual work is not associated with a warranty claim, and this work is not otherwise required pursuant to the MIPA or MIA.

98. Defendant Radial specifically requested that RNA Services perform this extra-contractual work, and coordinated with RNA Services in performing the work.

99. The costs for the extra-contractual work requested by Defendant Radial totals $267,254.66, which includes hourly rates for RNA Services electricians, parts, communications, and reimbursements for mileage traveled by RNA Services employees.

100. RNA Services conducted additional extra-contractual work, again at the request of Defendant, consisting of troubleshooting specific equipment. The cost associated with this work was $2,739.50 which include parts, labor, and mileage reimbursement.

101. Plaintiffs demanded payment of these costs from Defendant Radial. (See Ex. 8, RNA March 11 Letter). On April 8, 2026, Defendant's Chief Legal Officer, Jeff Keeler, emailed counsel for Plaintiffs and confirmed that Defendant does not intend to pay these amounts due. (See Ex. 9.)

## FIRST CAUSE OF ACTION

### (Breach Of Contract, FOST-A MIPA, By Plaintiff RNA Against Defendant)

102. Plaintiffs reallege and incorporate herein all allegations set forth above.

103. The FOST-A MIPA is a valid contract between Plaintiff RNA and Defendant Radial.

104. The total amount due from Defendant Radial to Plaintiff RNA under the FOST-A MIPA is $1,559,817.

105.    The Substantial Completion date for the FOST-A project was July 27, 2025, and the payment of the COD amount was due on July 30, 2025.

106.    Defendant Radial made a partial payment of the COD payment on July 27, 2025 of $244,818, but still has not paid the remaining $514,999.

107.    Pursuant to the FOST-A MIPA, Defendant is required to pay Plaintiff RNA the remaining COD Payment of $514,999.

108.    Plaintiff RNA fulfilled all conditions and obligations under the FOST-A MIPA and is entitled to the foregoing payment. To the extent that Plaintiffs have not performed any obligation, such nonperformance is excused.

109.    Defendant has failed to pay the full COD Payment pursuant to the FOST-A MIPA within three (3) days of the Substantial Completion Date, and the outstanding balance due to RNA is $514,999.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Breach Of Contract, FOST-B MIPA, By Plaintiff RNA Against Defendant)**

110.    Plaintiffs reallege and incorporate herein all allegations set forth above.

111.    The FOST-B MIPA is a valid contract between Plaintiff RNA and Defendant Radial.

112.    The total amount due from Defendant Radial to Plaintiff RNA under the FOST-B MIPA is $1,874,348.

113.    The Substantial Completion date for the FOST-B project was July 27, 2025, and the payment of the COD amount was due on July 30, 2025.

114.    Defendant Radial made a partial payment of the COD payment on July 27, 2025 of $936,723, but still has not paid the remaining $487,625.

115.    Pursuant to the FOST-B MIPA, Defendant is required to pay Plaintiff RNA the remaining COD Payment of $487,625.

116. Plaintiff RNA fulfilled all conditions and obligations under the FOST-B MIPA and is entitled to the foregoing payment. To the extent that Plaintiffs have not performed any obligation, such nonperformance is excused.

117. Defendant has failed to pay the full COD Payment pursuant to the FOST-B MIPA within three (3) days of the Substantial Completion Date, and the outstanding balance due to RNA is $487,625.

WHEREFORE, Plaintiffs prays for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Breach Of Contract, RASE MIPA, By Plaintiff RNA Against Defendant)

118. Plaintiffs reallege and incorporate herein all allegations set forth above.

119. The RASE MIPA is a valid contract between Plaintiff RNA and Defendant Radial.

120. Defendant Radial failed to perform its obligations under the RASE MIPA, and also failed to take actions necessary to terminate the MIPA.

121. As a result of Radial's failure to perform under and failure to terminate the MIPA, Plaintiffs incurred significant costs, currently totaling $615,431.87, for which reimbursement from Defendant Radial to Plaintiffs is due under the RASE MIPA.

122. Defendant has failed to pay Plaintiff RNA despite RNA's demand for such payment.

WHEREFORE, Plaintiffs prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Breach Of Contract, DOSP Project, By Plaintiff RNA Services Against Defendant)

123. Plaintiffs reallege and incorporate herein all allegations set forth above.

124. Throughout 2025, on multiple separate occasions relating to different work, Defendant requested Plaintiff RNA Services conduct additional, extra-contractual work on the DOSP project. Each of these requests constitutes a separate contract for services.

125. Defendant is required to reimburse and pay Plaintiff RNA Services for such extra-contractual work.

126. Plaintiff RNA Services conducted the extra-contractual work at a total cost of $161,672.25, which includes costs for electrical work, mileage reimbursement, and employee labor.

127. RNA Services has demanded payment of the foregoing sum, but Defendant has failed to reimburse Plaintiff RNA Services for this work.

WHEREFORE, Plaintiffs prays for judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Breach Of Contract, WEST II Project, By Plaintiff RNA Services Against Defendant)

128. Plaintiffs reallege and incorporate herein all allegations set forth above.

129. Throughout 2025 Defendant requested Plaintiff RNA Services conduct additional, extra-contractual work on the WEST II project.

130. Defendant is required to reimburse and pay Plaintiff RNA Services for such extra-contractual work.

131. Plaintiff RNA Services conducted the extra-contractual work at a total cost of $269,994.16, which includes costs for electrical work, mileage reimbursement, and employee labor.

132. RNA Services has demanded payment of the foregoing sum, but Defendant has failed to reimburse Plaintiff RNA Services for this work.

WHEREFORE, Plaintiffs prays for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Quantum Meruit, DOSP and WEST II Projects, By Plaintiff RNA Services Against Defendant)

133. Plaintiffs reallege and incorporate herein all allegations set forth above.

134. Under the doctrine of quantum meruit, a party who confers services upon another, which the recipient knowingly accepts under circumstances that reasonably notify the recipient

that the provider expects to be paid, is entitled to recover the reasonable value of those services to prevent unjust enrichment.

135.    Defendant requested that Plaintiff RNA Services conduct certain extra-contractual work for the DOSP and WEST II projects.

136.    In the alternative to the breach of contract claim, Defendant is required to reimburse Plaintiff RNA Services for the costs of performing the extra-contractual work at the DOSP and WEST II Projects under a theory of quantum meruit.

137.    Defendant benefited from the extra-contractual work conducted by Plaintiff RNA Services.

138.    Defendant has not paid Plaintiff RNA Services for the extra-contractual work at the DOSP and WEST II projects, despite demand for such payment by RNA Services.

139.    Defendant has been unjustly enriched by retaining the benefits of RNA Services' work without paying Plaintiff RNA Services the reasonable value of such work.

140.    It would be inequitable and unjust to permit Defendant Radial to retain the benefits of RNA Services' work without compensating Plaintiff RNA Services.

141.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff RNA Services has been damaged in the amount of the reasonable value of the work performed for the DOSP and WEST II projects, in an amount to be proven at trial but presently estimated at $431,666.41, plus any prejudgment interest to be determined and any other amounts permitted by law.

WHEREFORE, Plaintiffs prays for judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

**(Breach Of Implied Covenant of Good Faith and Fair Dealing, By Plaintiff RNA Against Defendant)**

142.    Plaintiffs reallege and incorporate herein all allegations set forth above.

143.    The FOST-A MIPA is a valid contract between Plaintiff RNA and Defendant.

144. Under California law, "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract . . . The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises." (*Miller v. Zurich American Ins. Co*., 41 Cal.App.5th 247, 257 (Ct. App. 2019), citing *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal.App.4th 873, 885 (Ct. App. 2011)).

145. Under the FOST-A MIPA, Plaintiffs' reasonable expectation was that Defendant would render payment for services conducted, in accordance with the terms of the MIPA and the reasonable expectations of the parties.

146. Instead, Defendant Radial has taken possession of the FOST-A project, but failed to render payment to Plaintiffs as required under the respective MIPA.

147. Additionally, Defendant Radial owes Plaintiffs $5,500.67 for service work performed on the FOST-A project, as well as $51,425.62 in pass-through interest charges incurred by RNA due to Radial's failure to make timely payments under the FOST-A MIPA and MIA.

148. The foregoing conscious and deliberate conduct by Defendant has frustrated the basic contractual purpose of the agreement between the parties.

149. Defendant's breaches of the covenant of good faith and fair dealing have materially damaged Plaintiffs in the amount of $571,351.91.

## EIGHTH CAUSE OF ACTION

### (Breach Of Implied Covenant of Good Faith and Fair Dealing, By Plaintiff RNA Against Defendant)

150. Plaintiffs reallege and incorporate herein all allegations set forth above.

151. The FOST-B MIPA is a valid contract between Plaintiff RNA and Defendant.

152. Under California law, "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract . . . The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises." (*Miller*, 41 Cal.App.5th at 257.)

153. Under the FOST-B MIPA, Plaintiffs' reasonable expectation was that Defendant would render payment for services conducted, in accordance with the terms of the MIPA and the reasonable expectations of the parties.

154. Instead, Defendant Radial has taken possession of the FOST-B project, but failed to render payment to Plaintiffs as required under the respective project MIPA.

155. Additionally, Defendant Radial owes Plaintiffs $5,500.67 for service work performed on the FOST-B project, as well as $51,425.62 in pass-through interest charges incurred by RNA due to Radial's failure to make timely payments under the FOST-B MIPA and MIA.

156. The foregoing conscious and deliberate conduct by Defendant has frustrated the basic contractual purpose of the MIPA agreement.

157. Defendant's breach of the covenant of good faith and fair dealing have materially damaged Plaintiffs in the amount of $544,551.29.

## NINTH CAUSE OF ACTION

### (Breach Of Implied Covenant of Good Faith and Fair Dealing, By Plaintiff RNA Against Defendant)

158. Plaintiffs reallege and incorporate herein all allegations set forth above.

159. The WEST II MIPA and MIA  are valid contracts between Plaintiff RNA and Defendant.

160. Under California law, "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract . . . The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises." (*Miller*, 41 Cal.App.5th at 257.)

161. Under the WEST II MIPA and MIA, Plaintiffs' reasonable expectation was that Defendant would render payment for services conducted, in accordance with the terms of the MIPA and MIA and the reasonable expectations of the parties.

162. Instead, Defendant Radial has taken possession of the WEST II project, but failed to render payment to Plaintiffs as required under the respective agreements and understanding of the parties.

163.    The foregoing conscious and deliberate conduct by Defendant has frustrated the basic contractual purpose of the agreements between the parties.

164.    Defendant's breach of the covenant of good faith and fair dealing have materially damaged Plaintiffs in the amount of $269,994.16.

### TENTH CAUSE OF ACTION

**(Breach Of Implied Covenant of Good Faith and Fair Dealing, By Plaintiff RNA**

**Against Defendant)**

165.    Plaintiffs reallege and incorporate herein all allegations set forth above.

166.    The DOSP-MIPA and MIA  are valid contracts between Plaintiff RNA and Defendant.

167.    Under California law, "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract . . . The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises." (*Miller*, 41 Cal.App.5th at 257.)

168.    Under the DOSP MIPA and MIA, Plaintiffs' reasonable expectation was that Defendant would render payment for services conducted, in accordance with the terms of the MIPA and MIA and the reasonable expectations of the parties.

169.    Instead, Defendant Radial has taken possession of the DOSP project, but failed to render payment to Plaintiffs as required under the respective agreements and understanding of the parties.

170.    The foregoing conscious and deliberate conduct by Defendant has frustrated the basic contractual purpose of the agreements between the parties.

171.    Defendant's breach of the covenant of good faith and fair dealing have materially damaged Plaintiffs in the amount of $161,672.25.

### ELEVENTH CAUSE OF ACTION

**(Breach Of Implied Covenant of Good Faith and Fair Dealing, By Plaintiff RNA**

**Against Defendant)**

172.    Plaintiffs reallege and incorporate herein all allegations set forth above.

173.    The RASE-MIPA and MIA   are valid contracts between Plaintiff RNA and Defendant.

174.    Under California law, "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract . . . The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises." (*Miller*, 41 Cal.App.5th at 257.)

175.    Under the RASE MIPA and MIA, Plaintiffs' reasonable expectation was that Defendant would perform its obligations under the MIPA and MIA and the reasonable expectations of the parties.

176.    Instead, Defendant Radial failed to perform its obligations under the RASE MIPA, and failed to properly terminate the RASE MIPA.

177.    The foregoing conscious and deliberate conduct by Defendant has frustrated the basic contractual purpose of the MIPA and the MIA agreements.

178.    Defendant's breaches of the covenant of good faith and fair dealing have materially damaged Plaintiffs in the amount of $615,431.87.

WHEREFORE, Plaintiffs prays for judgment as hereinafter set forth.

### TWELFTH CAUSE OF ACTION

#### (Account Stated, By Plaintiff RNA Against Defendant)

179.    Plaintiffs reallege and incorporate herein all allegations set forth above.

180.    An account stated arises when there exists: (a) a prior transactional relationship creating a debtor-creditor relationship; (b) a statement of account balanced and rendered to the debtor; and (c) the debtor's acknowledgment of the account as correct, whether express or implied by retention without timely objection or by part payment.

181.    Plaintiff RNA and Defendant Radial had a prior transactional relationship that created a debtor-creditor relationship.

182.    Through email communications, Plaintiff RNA presented Defendant Radial a statement of account showing an outstanding balance for the COD payments on both the FOST-A MIPA and FOST-B MIPA.

183.    On or about February 12, 2026, Defendant Radial acknowledged that under both the FOST-A MIPA and the FOST-B MIPA it owed Plaintiff RNA $1,002,624. (Ex. 7; Radial February 12 Letter.)

184.    By reason of the foregoing, an account stated was formed, and Defendant Radial became obligated to pay Plaintiff RNA the stated balance.

## PRAYER FOR RELIEF

Plaintiffs pray for a trial by court pursuant to the parties' jury trial waivers, and for judgment as follows:

1.    For damages according to proof but in an amount not less than $2,163,574.86;

2.    For prejudgment interest at the contractual rate or, alternatively, at the legal rate from the date each payment was due;

3.    For attorneys' fees as otherwise allowed by law or contract;

4.    For costs of suit incurred herein; and,

5.    For such other and further relief as the court deems just and proper.

DATED: April 29, 2026                          RESPECTFULLY SUBMITTED,

EVERVIEW LTD.

_____

BRADLEY JOHNSON, ESQ.
*Attorneys for Plaintiffs RENEWABLE AMERICA LLC AND RNA SERVICES LLC*

**VERIFICATION**

I, ARDESHIR ARIAN, am the managing member of Plaintiffs RENEWABLE AMERICA LLC and RNA SERVICES LLC in the above-captioned action. I have read the Complaint filed on behalf of Plaintiffs and know the contents thereof. The same are true of my own knowledge, except as to those matters which are therein stated to be on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  APRIL 29, 2026

BY: _____

ARDESHIR ARIAN

Signer ID: B7ZXV5KFZ8...

---

27
COMPLAINT